# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN CABRERA ESPINOZA,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, et al.,<br><br>Respondents. | Case No. 1:24-cv-01118-SAB-HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, TERMINATING PETITIONER'S REQUEST FOR ADJUDICATION, DENYING PETITIONER'S MOTION FOR STATUS CONFERENCE, AND DIRECTING CLERK OF COURT TO CLOSE CASE<br><br>(ECF Nos. 1, 70, 74) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 60, 62, 63.)

## I.

## BACKGROUND

Petitioner was born in Mexico, came to the United States with his parents when he was a teenager, and settled in the Central Valley. (ECF No. 1 at 6[1].) In 2001, Petitioner married his wife, a United States citizen, and he became a legal permanent resident in 2003. Petitioner and his wife have five children. (ECF No. 1 at 6.)

In 2004, Petitioner was convicted of inflicting corporal injury on a spouse and was sentenced to serve thirty days in jail. (ECF No. 18-2.) In 2014, Petitioner was convicted of

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

soliciting a minor to commit a felony, extortion, loan sharking, and preventing or dissuading witnesses from providing testimony, and was sentenced to an imprisonment term of five years. (ECF No. 18-4.) Petitioner completed his sentence and was released from state prison in August 2015. (ECF No. 1 at 8.)

On August 3, 2015, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner, served him with a Notice to Appear, and charged Petitioner as removable based on the 2004 conviction. (ECF No. 18-5.) On September 16, 2015, an immigration judge ("IJ") dismissed Petitioner's proceedings without prejudice. (ECF No. 18-6.)

On November 17, 2022, Petitioner was arrested after a domestic incident. (ECF No. 1 at 9; ECF No. 18-3.) The police transferred Petitioner to ICE custody on November 22, 2022. (ECF No. 1 at 9.) ICE served Petitioner with a Notice to Appear and charged him as removable based on his 2014 convictions for extortion and witness tampering.[2] That same day, ICE reviewed Petitioner's custody status pursuant to Fraihat v. U.S. Immigr. & Customs Enf't, 445 F. Supp. 3d 709 (C.D. Cal. 2020), vacated, 2022 WL 20212706 (C.D. Cal. Sept. 16, 2022).[3] It was determined that Petitioner should remain in custody because he posed a risk to public safety based on his criminal history, and Petitioner was transferred to the Golden State Annex in McFarland, California. (ECF No. 18 at 5.)

On April 20, 2023, an IJ denied Petitioner's application for relief and ordered Petitioner removed to Mexico. (ECF No. 18-9.) On or about May 22, 2023, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"). (ECF No. 18 at 6.) On or about June 23, 2023, Petitioner filed a motion for a prolonged detention bond hearing. (Id.) On June 26, 2023, an IJ denied the request for custody redetermination for lack of jurisdiction. (ECF No. 18-10.) On July

---

[2] Petitioner is pursuing post-conviction relief for his 2014 convictions. He filed a motion pursuant to California Penal Code sections 1473.7 and 1018 in the Tulare County Superior Court, which denied the motion on June 3, 2024. Petitioner filed an appeal of this denial to the California Court of Appeal, Fifth Appellate District. (ECF No. 64-1 at 4.)

[3] The district court "certified two nationwide classes and issued a preliminary injunction that applied to all immigration detention facilities in the United States. The injunction imposed a broad range of obligations on the federal government, including ordering ICE to identify and track detainees with certain risk factors that the district court identified; requiring ICE to issue a comprehensive Performance Standard covering a myriad of COVID-19-related topics, such as social distancing and cleaning policies; and setting directives for releasing detainees from custody altogether." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 618 (9th Cir. 2021).

17, 2023, Petitioner filed an appeal with the BIA, and on September 25, 2023, the BIA affirmed the denial for custody redetermination. (ECF No. 18 at 6; ECF No. 18-11.) On September 26, 2023, the BIA dismissed Petitioner's appeal of the IJ's order of removal and denial of relief from removal. (ECF No. 18-12.) On October 5, 2023, Petitioner filed a petition for review in the Ninth Circuit along with a motion to stay removal, which automatically stayed Petitioner's order of removal until further order of the court pursuant to Ninth Circuit General Order 6.4(c)(1). (ECF No. 18-13; ECF No. 1-3 at 6.)

On November 14, 2023, Petitioner filed the instant petition for writ of habeas corpus and a motion for preliminary injunction in the United States District Court for the Northern District of California. (ECF Nos. 1, 3.) Petitioner asserts violations of the Fifth Amendment, arguing that his prolonged detention violates his right to substantive due process and prolonged categorical detention without an individualized determination violates procedural due process. (ECF No. 1.) On December 20, 2023, a hearing was held, the motion for preliminary injunction was granted, and the United States District Court for the Northern District of California ordered that within fourteen days, Respondents must provide Petitioner with an individualized bond hearing before an immigration judge at which the government shall bear the burden to prove by clear and convincing evidence that Petitioner's continued detention remains warranted to protect the public or prevent Petitioner from fleeing. (ECF Nos. 21, 22.)

On December 28, 2023, an IJ held a bond hearing and concluded that, while Petitioner does not pose a danger to the community, he poses a flight risk "that no amount of bond conditions" can mitigate, thereby warranting his continued detention. (ECF No. 26-2 at 25.) On January 29, 2024, Petitioner filed a motion for temporary restraining order, arguing that the immigration judge failed to consider alternatives to detention in violation of his constitutional procedural due process rights and requesting the court to require the immigration judge to consider those alternatives at a second bond hearing. (ECF No. 23.) A hearing was held, and on March 11, 2024, the motion was denied. (ECF Nos. 32, 33.) On April 10, 2024, the BIA dismissed Petitioner's appeal of the IJ's decision denying bond. (ECF No. 36 at 5; ECF No. 37-1.)

On May 22, 2024, Petitioner filed a petition for a U visa with the United States Citizenship and Immigration Services ("USCIS"). (ECF No. 64-1 at 3.) That petition is still pending, as of January 17, 2025. (ECF No. 68 at 9.)

On September 11, 2024, the Ninth Circuit denied Petitioner's petition for review. (ECF No. 64-1 at 2.) That same day, Petitioner filed a motion to reopen his removal proceedings with the BIA. (ECF No. 64-1 at 3.) On January 13, 2025, the BIA denied the motion. (ECF No. 68 at 4.) On January 17, 2025, Petitioner filed a petition for review of the BIA's decision dismissing his motion to reopen his immigration proceedings along with a motion for stay of removal. (Id.) On January 22, 2025, the mandate issued in Petitioner's petition for review of the removal order proceedings. Mandate, Espinoza v. Garland, No. 23-2583 (9th Cir. Jan. 22, 2025), ECF No. 59.[4] On February 28, 2025, the Ninth Circuit granted the motion for stay and issued a stay of Petitioner's removal until the mandate issues in his new petition for review proceedings. Order, Espinoza v. Bondi, No. 25-341 (9th Cir. Feb. 28, 2025), ECF No. 18.

Meanwhile, on September 16, 2024, the United States District Court for the Northern District of California ordered that Petitioner's federal habeas case be transferred to this Court in light of Doe v. Garland, 109 F.4th 1188, 1197 (9th Cir. 2024). (ECF No. 54.) On September 20, 2024, the case was transferred. (ECF No. 55.) Respondents filed an answer, and Petitioner filed a traverse. (ECF Nos. 17, 36.) The parties also filed supplemental briefs addressing Doe v. Becerra, 732 F. Supp. 3d 1071 (N.D. Cal. 2024), and the impact of the Ninth Circuit's denial of Petitioner's petition for review. (ECF Nos. 38–41, 67, 68.)

## II.

## DISCUSSION

### A. Overview of Caselaw Regarding Immigration Detention Statutes

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory

---

[4] The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted)). See also United States v. Raygoza-Garcia, 902 F.3d 994, 1001 (9th Cir. 2018) ("A court may take judicial notice of undisputed matters of public record, which may include court records available through PACER.").

scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." <u>Prieto-Romero v. Clark</u>, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." <u>Avilez v. Garland</u>, 69 F.4th 525, 529 (9th Cir. 2023). The Ninth Circuit has held that § 1226(c) "applies throughout the administrative and judicial phases of removal proceedings." <u>Avilez</u>, 69 F.4th at 535. "Section 1231(a) applies to detention after the entry of a final order of removal" and "does not apply to detention during the pendency of administrative or judicial removal proceedings." <u>Avilez</u>, 69 F.4th at 530–31. "When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 682 (2001). Section 1231 governs detention during this ninety-day removal period, which begins on the latest of either "(1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." <u>Avilez</u>, 69 F.4th at 531 (citing 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)). "A special statute authorizes further detention if the Government fails to remove the alien during those 90 days." <u>Zadvydas</u>, 533 U.S. at 682 (citing 8 U.S.C. § 1231(a)(6)).

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" <u>Rodriguez v. Robbins</u> (<u>Rodriguez II</u>), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting <u>Rodriguez v. Hayes</u> (<u>Rodriguez I</u>), 591 F.3d 1105, 1114 (9th Cir. 2010)). In <u>Zadvydas v. Davis</u>, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them,

challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[5] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under 8 U.S.C. § 1226(c),

---

[5] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

1  specifically noted that "a lawful permanent resident alien such as respondent could be entitled to

2  an individualized determination as to his risk of flight and dangerousness if the continued

3  detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J.,

4  concurring).

5      In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention

6  pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond

7  hearings and determinations to justify their continued detention." Rodriguez v. Robbins

8  (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional

9  concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is

10  implicitly time-limited and expires after six months. Thereafter, the government's authority to

11  detain shifts to § 1226(a), which requires a bond hearing governed by the procedural

12  requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[6] Rodriguez II, 715 F.3d

13  at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C.

14  §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every

15  six months so that noncitizens may challenge their continued detention as 'the period of . . .

16  confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II),

17  634 F.3d 1081, 1091 (9th Cir. 2011)).

18      In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth

19  Circuit's interpretation that § 1226(c) included "an implicit 6–month time limit on the length of

20  mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the

21  constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic

22  bond hearings every six months in which the Attorney General must prove by clear and

23  convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. 296,

24  304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the]

25  constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the

26

27  [6] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous

28  record of the bond hearings, such as a transcript or audio recording. Id.

1    case to the district court to consider the constitutional arguments in the first instance, but noted

2    that it had "grave doubts that any statute that allows for arbitrary prolonged detention without

3    any process is constitutional or that those who founded our democracy precisely to protect

4    against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d

5    252, 255, 256 (9th Cir. 2018).

6          Since the Rodriguez remand, there has been "a dearth of guidance regarding the point at

7    which an individual's continued mandatory detention under Section 1226(c) becomes

8    unconstitutional." Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D.

9    Cal. Jan. 25, 2019). See Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due

10   process requires a bond hearing for aliens detained under § 1226(c) is not before us today. And

11   we take no position on that question."), vacated and remanded on other grounds, 144 S. Ct. 1339

12   (2024); Avilez, 69 F.4th at 538 (declining to make a determination on whether due process

13   required a bond hearing for noncitizen detained under § 1226(c) and remanding to district court

14   for consideration of due process claim). Although the Ninth Circuit has yet to take a position on

15   whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c),

16   it has recognized that "district courts throughout this circuit have ordered immigration courts to

17   conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due

18   process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention

19   pending removal proceedings, without a bond hearing, will—at some point—violate the right to

20   due process.'" Martinez, 36 F.4th at 1223 (citation omitted).

21         Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require

22   a bond hearing before an IJ after six months of detention for an alien whose release or removal is

23   not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a

24   bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762,

25   766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman

26   Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising

27   from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213

28   L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory

1    interpretation in *Aleman Gonzalez*," <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1201 (9th Cir.

2    2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the

3    Government to provide bond hearings before immigration judges after six months of detention,

4    with the Government bearing the burden of proving by clear and convincing evidence that a

5    detained noncitizen poses a flight risk or a danger to the community," <u>Arteaga-Martinez</u>, 596

6    U.S. at 581. <u>Arteaga-Martinez</u> declined to reach the constitutional claims, <u>id.</u> at 583, and "after

7    the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined

8    whether the Due Process Clause requires additional bond procedures under" 8 U.S.C. § 1231.

9    <u>Rodriguez Diaz</u>, 53 F.4th at 1201.

10       **B.  Mootness**

11       At the time the instant petition was filed, Petitioner was detained under § 1226(c). Since

12    then, the Ninth Circuit has denied the petition for review of Petitioner's removal order. Although

13    there is currently a stay of removal, "the entry of a stay of removal . . . while a court reviews an

14    alien's . . . petition for review of the BIA's denial of a motion to reopen . . . does not prevent the

15    removal period from beginning." <u>Prieto-Romero</u>, 534 F.3d at 1060 n.6. Accordingly, Petitioner's

16    current detention is authorized under § 1231(a). <u>See</u> <u>id.</u>; <u>Diouf v. Mukasey</u>, 542 F.3d 1222,

17    1229–30 (9th Cir. 2008).

18       Most appellate courts addressing the issue have held that a petition challenging detention

19    under 8 U.S.C. § 1226(c) is moot when the detention authority shifts to § 1231. <u>Farah v. U.S.</u>

20    <u>Att'y Gen.</u>, 12 F.4th 1312, 1332–33 (11th Cir. 2021) ("As soon as we issue our final order

21    resolving his immigration petition, Farah's removal period will commence, and his detention will

22    be governed by section 1231(a). So he will no longer have a basis to challenge his detention

23    under section 1226(c)."); <u>Wang v. Ashcroft</u>, 320 F.3d 130, 147 (2d Cir. 2003) ("Accordingly,

24    there can be no doubt that Wang is *now* subject to detention under [INA] § 241 [8 U.S.C. § 1231]

25    . . . . To the extent that Wang previously may have had a cognizable due process argument under

26    [INA] § 236 [8 U.S.C. § 1226], that claim has been rendered moot."); <u>Godfrey v. Ball</u>, No. 23-

27    7104, 2024 WL 4471571, at *1 (2d Cir. Oct. 11, 2024) ("A due process challenge to detention

28    under § 1226 is rendered moot by judicial denial of a petition for review of a removal order

1  because that decision shifts detention authority to § 1231."); <u>Kumar v. U.S. Dep't of Homeland

2  Sec.</u>, No. 19-2404, 2020 WL 2904685, at *1 (6th Cir. June 1, 2020) ("Kumar's challenge to his

3  detention under § 1226 no longer presents an active controversy because . . . Kumar is now being

4  held pursuant to § 1231, and his appeal is moot."); <u>Maldonado-Velasquez v. Moniz</u>, No. 17-

5  1918, 2018 WL 11444979, at *1 (1st Cir. Mar. 22, 2018) ("Maldonado-Velasquez is no longer

6  being detained pursuant to the statute at the heart of his due process claim, 8 U.S.C. § 1226. The

7  shift in detention authority has rendered Maldonado-Velasquez's due process claim moot."

8  (citation omitted))).

9          Petitioner argues,

10             At bottom, Mr. Cabrera Espinoza's substantive and procedural due process
               challenges remain live because they are chiefly predicated on the facts that (1) the
11             government has confined him for an excessive duration (now, for over two years)
               without any statutory or regulatory process for neutral review; (2) the government
12             lacks a legitimate, non-punitive purpose for continuing to confine Mr. Cabrera
               Espinoza, particularly in light of the ready-availability of proven and effective
13             non-custodial alternatives to detention; and (3) the conditions of confinement to
               which he continues to be subjected at the for-profit Golden State Annex detention
14             facility are debilitating and are progressively degrading his health. All of these
               facts will remain true even as the statutory authority for his detention shifts from 8
15             U.S.C. § 1226(c) to § 1231(a).

16  (ECF No. 68 at 5.) In support of this argument, Petitioner relies on <u>Doe v. Becerra</u>, 697 F. Supp.

17  3d 937 (N.D. Cal. 2023), in which the petitioner's basis of detention shifted from § 1226(c) to

18  § 1231(a) during the pendency of the habeas petition. In <u>Doe</u>, the district court stated:

19             Respondents argue in part that Doe's petition is now moot in light of the change
               in the basis for his detention. ECF 24 at 3-5. The Court need not address this line
20             of argument other than to acknowledge that a live controversy exists because Doe
               remains detained and to note that the Court's conclusion in this case is based on
21             the length of Doe's detention without a hearing, not the statutory basis for his
               detention. In contrast to one of the orders cited by Respondents, *Quezada v.
22             Hendricks*, 821 F. Supp. 2d 702, 704 (D.N.J. 2011), this Court does not find that
               the statutory basis for detention impacts the analysis, particularly where the
23             Government has made clear that Doe's continued detention is not speculative. *See*
               ECF 24 at 5-6. The IJ's final order of removal may have started a new clock for
24             the Government to take a different type of action, but it did not reset the clock as
               to the time Doe has been detained without a bond hearing. Doe's continued civil
25             detention of more than 22 months without a hearing to consider the risks related
               to his potential release on bond supports his due process claim.
26

27  <u>Doe v. Becerra</u>, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023), <u>appeal dismissed</u>, No. 24-332, 2025

28  WL 252476 (9th Cir. Jan. 15, 2025).

Petitioner also asserts that the authorities referenced above "are distinguishable, lack reasoning, or their reasoning is inapposite." (ECF No. 68 at 7.) Petitioner argues that in <u>Farah</u> and <u>Godfrey</u>, the issue of mootness was uncontested or conceded by the petitioner, and <u>Kumar</u> and <u>Maldonado-Velasquez</u> did not provide much reasoning or considered analysis of the issue. (<u>Id.</u> at 7 & n.5.) Petitioner contends that "*Wang* offers an appropriate *analytical* framework to apply here." (<u>Id.</u> at 8.) In <u>Wang</u>, the petitioner's "removal period commence[d] at the moment [the Second Circuit] file[d] this decision," and thus, the petitioner was subject to detention under § 1231. <u>Wang</u>, 320 F.3d at 147. The Second Circuit found "[t]o the extent that Wang previously may have had a cognizable due process argument under [INA] § 236 [8 U.S.C. § 1226], that claim has been rendered moot," but addressed whether Wang's "continued detention under [INA] § 241 [8 U.S.C. § 1231]" violates the Due Process Clause. <u>Wang</u>, 320 F.3d at 147.

"[H]ere, Mr. Cabrera Espinoza raises as-applied constitutional challenges to the fact of his ongoing and prolonged detention, regardless of any particular statutory basis for the government's detention authority." (ECF No. 68 at 7–8.) The Court finds <u>Doe v. Becerra</u>, 697 F. Supp. 3d 937, persuasive. "[A] live controversy exists because [Petitioner] remains detained," and the Court's analysis "in this case is based on the length of [Petitioner]'s detention . . . not the statutory basis for his detention." <u>Doe</u>, 697 F. Supp. 3d at 944.

**C. Due Process**

Petitioner asserts that his prolonged detention under conditions indistinguishable from criminal incarceration has become punitive and violates the Fifth Amendment's guarantee of substantive due process. (ECF No. 1 at 3, 15–17; ECF No. 36 at 5–13.) Alternatively, Petitioner argues that procedural due process requires that he be provided with another individualized determination at which the government bears the burden of justifying his continued detention by clear and convincing evidence. (ECF No. 36 at 13–15.)

> The Due Process Clause of the Fifth Amendment provides that "No person shall ... be deprived of life, liberty, or property, without due process of law...." This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v.*

11

> *Connecticut,* 302 U.S. 319, 325–326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). This requirement has traditionally been referred to as "procedural" due process.

United States v. Salerno, 481 U.S. 739, 746 (1987).

1.  Substantive Due Process

Petitioner contends that "prolonged civil immigration detention is punitive in violation of substantive due process when (1) a person subjected to prolonged civil immigration detention poses no risk of flight or danger to the community; (2) restrictions short of physical custody are sufficient to mitigate any risk a detained person poses; *or* (3) the duration of the detention exceeds the bounds permitted by due process to achieve the limited purpose of civil confinement." (ECF No. 1 at 17.)

The "Due Process Clause protects an alien subject to a final order of deportation," and the Supreme Court has "held that punitive measures [can] not be imposed upon aliens ordered removed because 'all persons within the territory of the United States are entitled to the protection' of the Constitution." Zadvydas, 533 U.S. at 693–94 (quoting Wong Wing v. United States, 163 U.S. 228, 238 (1896)). "As an initial matter, the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." Salerno, 481 U.S. at 746 (citing Bell v. Wolfish, 441 U.S. 520, 537 (1979)). "A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing Salerno, 481 U.S. at 747). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Torres, 995 F.3d at 708 (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).[7]

---

[7] While this matter was before the United States District Court for the Northern District of California, the district court ordered the parties to file supplemental briefs addressing Doe v. Becerra, 732 F. Supp. 3d 1071, 2024 WL 2340779 (N.D. Cal. May 2, 2024). (ECF No. 38.) In Doe, the Northern District of California applied five factors (length of detention and whether it is excessive in relation to its regulatory purpose; the government's contribution to any delay; the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and the conditions of

1          a.  **Flight Risk**

2          Petitioner asserts that "his continued detention does not serve any nonpunitive

3    governmental interest because [he] does not pose a risk of flight or danger to the community."

4    (ECF No. 1 at 18.) At the bond hearing, the IJ concluded that Petitioner was not a danger to the

5    community, and Respondent does not challenge such a conclusion. Respondent argues that "[t]he

6    evidence in the record establishes that Petitioner is a flight risk based on the findings of a neutral

7    immigration judge," which should outweigh the "only evidence in the record that Petitioner

8    proffered to support that he is not a flight risk"—the "self-serving declarations from himself and

9    his family members." (ECF No. 41 at 5.)

10         In Demore, the Supreme Court recognized that detention of deportable criminal aliens

11   pending their removal proceedings "necessarily serves the purpose of preventing deportable

12   criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the

13   chance that, if ordered removed, the aliens will be successfully removed." Demore, 538 U.S. at

14   528. Further, "[t]he risk of a detainee absconding also inevitably escalates as the time for

15   removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208. See Johnson v. Guzman

16   Chavez, 594 U.S. 523, 544  (2021) (finding that "Congress had obvious reasons to treat" two

17   "groups of aliens who posed different risks of flight"—"aliens detained under § 1226 before

18   having been ordered removed and those held under § 1231 after already having been ordered

19   removed"—differently because "aliens who have already been ordered removed are generally

20   inadmissible" and "[t]he only apparent relief they can hope to obtain is a grant of withholding-

21   only relief, and they would seem to still have a chance to get that relief if they absconded and

22   were again apprehended").

23         Here, despite "not minimizing or discounting [Petitioner's] ties to the community, his

24   family members here in the United States, the length of time he was lived and worked and paid

25   taxes in the United States," the IJ found that the government "met its burden of proof to show by

26   detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes
27   are held) it found relevant in determining whether continued detention under § 1226(c) violates substantive due
     process. Id. at 1080–90. The Court notes that a decision of the United States District Court for the Northern District
     of California is not binding on this Court and declines to apply the five-factor balancing test fashioned in Doe v.
28   Becerra, 732 F. Supp. 3d 1071.

13

1  clear and convincing evidence that [Petitioner] is such a flight risk that no amount of bond

2  conditions can mitigate that flight risk" because relief from removal was "quite speculative" and

3  Petitioner's acknowledgement that he is wanted for arrest in Mexico for his participation in a

4  shooting death. (ECF No. 26-2 at 20, 25–26.) Since that determination, the Ninth Circuit has

5  denied Petitioner's petition for review regarding his removal order, and "[t]he risk of a detainee

6  absconding also inevitably escalates as the time for removal becomes more imminent."

7  Rodriguez Diaz, 53 F.4th at 1208. Accordingly, the Court finds that Petitioner is a flight risk and

8  his detention is rationally connected to the regulatory purpose of preventing Petitioner from

9  fleeing during his removal proceedings, thus increasing the chance of ensuring that Petitioner

10  will be successfully removed if his current petition for review regarding his motion to reopen is

11  denied.

12                          **b.  Conditions of Confinement**

13       Petitioner contends that even if he poses some risk, "restrictions short of his continued

14  physical confinement, under conditions that are identical to those of criminal custody, are

15  sufficient to mitigate any risk." (ECF No. 1 at 18.) Petitioner argues that prolonged immigration

16  detention becomes unconstitutionally punitive if "its purpose can be achieved through 'less

17  harsh' alternatives to physical custody." (Id. at 16.) However, the Supreme "Court has

18  recognized detention during deportation proceedings as a constitutionally valid aspect of the

19  deportation process" and "when the Government deals with deportable aliens, the Due Process

20  Clause does not require it to employ the least burdensome means to accomplish its goal."

21  Demore, 538 U.S. at 523, 528. Therefore, the Court finds that the pertinent question for purposes

22  of substantive due process is not whether the government's "purpose can be achieved through

23  'less harsh' alternatives to physical custody," (id. at 16), but whether Petitioner is being

24  subjected to conditions of confinement that are punitive.

25       "[A] civil detainee awaiting adjudication is entitled to conditions of confinement
         that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). "[A]
26       restriction is 'punitive' where it is intended to punish, or where it is 'excessive in
         relation to its non-punitive purpose,' or is 'employed to achieve objectives that
27       could be accomplished in so many alternative and less harsh methods.'" *Id.* at
         933–34 (alteration accepted) (first quoting *Demery v. Arpaio*, 378 F.3d 1020,
28       1028 (9th Cir. 2004); and then quoting *Hallstrom v. City of Garden City*, 991 F.2d

1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Wolfish*, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021) (first alteration added).

Petitioner argues that he "entitled to a presumption that his continued civil confinement is unlawfully punitive because the conditions are indistinguishable from those of criminal custody, providing further support for the conclusion that Mr. Cabrera Espinoza's incarceration is excessive in relation to the government's interest," citing to Jones v. Blanas, 393 F.3d 918, 934 (9th Cir. 2004). (ECF No. 1 at 20.) In Jones, the Ninth Circuit held:

> With respect to an individual confined awaiting adjudication under civil process, a presumption of punitive conditions arises where the individual is detained under conditions identical to, similar to, or more restrictive than those under which pretrial criminal detainees are held, or where the individual is detained under conditions more restrictive than those he or she would face upon commitment.

Jones, 393 F.3d at 934. However, in Fraihat, which addressed whether ICE's COVID-19 policies reflected unconstitutional punishment under the Fifth Amendment, the Ninth Circuit observed that "*Jones* announced the foregoing comparative presumption in the context of a California state prisoner who was civilly detained and awaiting proceedings under California's Sexually Violent Predator Act" and "Plaintiffs have not identified authority from this Court extending *Jones*'s presumption to the context of federal immigration detainees." Fraihat, 16 F.4th at 648. The Ninth Circuit further observed that there is "no support in our cases for applying *Jones*'s presumption about comparative 'conditions' of confinement to the government's continued *ability* to confine persons pursuant to lawful authority." Id. at 649. Although Fraihat "assum[ed] without deciding that it would be appropriate to invoke that presumption in the immigration context," the Court declines to invoke the presumption here because, as noted by the Ninth Circuit, "different government interests are at stake" in the immigration context. Fraihat, 16 F.4th at 648.

Here, the petition outlines various ways in which "immigrants detained at Golden State Annex have raised the alarm about unlivable and unsanitary housing conditions." (ECF No. 1 at 9.) "The conditions [Petitioner] describes at Golden State Annex are certainly problematic, but they are largely problematic for all detainees there in the same way." Martinez Leiva v. Becerra,

No. 23-cv-02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023) (citation omitted). The pertinent question is whether the conditions are excessive as to Petitioner, and Petitioner has specified only one difference between the conditions of his immigration detention and his state custody[8]—while he had access to "rehabilitation classes or resources" in state custody, he only has access to "online classes" at the Golden State Annex Detention Facility.[9] (ECF No. 1 at 11; ECF No. 1-1 at 5–6.) Based upon the limited record before this Court, the Court finds that Petitioner has not established that he is being subjected to conditions of confinement that are punitive. See Doe, 732 F. Supp. 3d at 1089 ("Determining whether the conditions at GSA are worse 'as a whole' than at the state facilities where Mr. Doe was imprisoned is a difficult comparison that would require comprehensive evidence.").

### c. Duration of Detention

In the context of criminal pretrial detention, the Ninth Circuit has observed, "It is undisputed that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). Torres held that the twenty-one-month detention due to the COVID-19 pandemic and related courthouse closures did not violate due process, but the Ninth Circuit "caution[ed] that the length of Torres's detention is approaching the limits of what due process can tolerate" and noted that "all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried." Torres, 995 F.3d at 709, 710 (citing United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012) ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit.")).

Here, Petitioner has been detained for thirty months—longer than the twenty-one months the Ninth Circuit found to be "approaching the limits of what due process can tolerate." Torres,

---

[8] "[D]ue process sets an absolute floor on the conditions civil detainees can be confined in. At a minimum, conditions must be less restrictive than post-conviction criminal detention." Doe, 732 F. Supp. 3d at 1088.

[9] Petitioner argues that because his "civil detention has been at Golden State Annex, the very same facility where Mr. Doe was detained . . . the evidence upon which the Court relied regarding the conditions at GSA in Doe is equally applicable here," citing to Doe, 732 F. Supp. 3d 1071, 2024 WL 2340779, at *13. (ECF No. 39 at 4.) "The point at which detention constitutes a due process violation requires a case-by-case analysis," Torres, 995 F.3d at 708, and the Court declines to rely on evidence that is not properly before this Court.

995 F.3d at 709. However, "while the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (quoting Torres, 995 F.3d at 708), abrogated on other grounds, Doe v. Garland, 109 F.4th 1188 (9th Cir. 2024). In fact, in the immigration detention context, the Ninth Circuit has upheld detention that lasted forty-one months and would continue while the petitioner's petition for review was pending in the Ninth Circuit. See Prieto-Romero, 534 F.3d 1053.

Based on the foregoing, the Court finds that Petitioner's thirty-month detention, during which Petitioner received an individualized bond hearing before an immigration judge where the government had the burden of justifying his continued detention by clear and convincing evidence, without more, does not violate Petitioner's substantive due process rights.

### d. **Zadvydas**

As set forth above, in Zadvydas v. Davis, 533 U.S. 678, the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

To the extent Petitioner asserts that he is entitled to relief pursuant to Zadvydas, (ECF No. 68 at 7 n.4), the Court rejects such a claim. On September 11, 2024, the Ninth Circuit denied Petitioner's petition for review regarding his removal order. (ECF No. 64-1 at 2.) On January 22, 2025, the mandate issued. Mandate, Espinoza, No. 23-2583 (9th Cir. Jan. 22, 2025), ECF No. 59. Accordingly, the removal period began on January 22, 2025,[10] and the "presumptively reasonable six-month period of post-removal period detention" has not yet elapsed. Prieto-Romero, 534 F.3d at 1062. Petitioner contends that "'there is no significant likelihood of

---

[10] As previously noted in section II(B), supra, although there is currently a stay of removal, "the entry of a stay of removal . . . while a court reviews an alien's . . . petition for review of the BIA's denial of a motion to reopen . . . does not prevent the removal period from beginning." Prieto-Romero, 534 F.3d at 1060 n.6.

removal in the reasonably foreseeable future,' given the pendency of Mr. Cabrera Espinoza's new petition for review and accompanying stay of removal." (ECF No. 68 at 7 n.4 (quoting Zadvydas, 121 S. Ct. at 2494).) "Although his removal has certainly been delayed by his pursuit of judicial review . . . he is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in *Zadvydas* were." Prieto-Romero, 534 F.3d at 1063 (quoting Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 347 (2005)). "Here there is no evidence that [Petitioner] is unremovable because the destination country will not accept him or his removal is barred by our own laws." Prieto-Romero, 534 F.3d at 1063 (noting that repatriations to Mexico are routine). Accordingly, Petitioner is not entitled to relief pursuant to Zadvydas.

### e. Summary

Based on the foregoing, the Court finds that: (1) Petitioner's detention is reasonably related to the legitimate nonpunitive governmental interest of "preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed," Demore, 538 U.S. at 528; (2) Petitioner has not established that he is being subjected to conditions of confinement that are punitive; (3) Petitioner's thirty-month detention, during which Petitioner received an individualized bond hearing before an immigration judge where the government had the burden of justifying his continued detention by clear and convincing evidence, without more, does not violate Petitioner's substantive due process rights; and (4) the "presumptively reasonable six-month period of post-removal period detention" has not yet elapsed and Petitioner "is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in *Zadvydas* were," Prieto-Romero, 534 F.3d at 1062, 1063 (quoting Jama, 543 U.S. at 347). Accordingly, Petitioner's first claim for relief is denied.

### 2. Procedural Due Process

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-

factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). However, in Lopez, this Court specifically noted that it was "by no means providing any insight as to whether a failure to provide a 'second bond hearing' violates due process. That analysis would be much different than the present analysis of whether due process is implicated in providing an initial bond hearing." Lopez, 631 F. Supp. 3d at 879 n.6.

Here, as Petitioner has already received a bond hearing and is seeking a second bond hearing, the Court finds that the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), is applicable. See Rodriguez Diaz, 53 F.4th at 1193, 1206 ("assum[ing] without deciding," in context of petitioner detained under to 8 U.S.C. § 1226(a) seeking a second bond hearing, that Mathews test applied, noting the Ninth Circuit has "regularly applied Mathews to due process challenges to removal proceedings," and finding "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); id. at 1219 (Wardlaw, J., dissenting) ("agree[ing] that the test developed in Mathews v.

1   *Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework

2   to determine whether there was a due process violation"); Guerrero-Sanchez v. Warden York

3   Cnty. Prison, 905 F.3d 208, 225 (3d Cir. 2018) (applying Mathews test in the context of

4   § 1231(a)), abrogated by Arteaga-Martinez, 596 U.S. 573; Banda, 385 F. Supp. 3d at 1118

5   (noting that "the *Mathews* factors may be well-suited to determining whether due process

6   requires a second bond hearing").

> [I]dentification of the specific dictates of due process generally requires
> consideration of three distinct factors. First, the private interest that will be
> affected by the official action; second, the risk of erroneous deprivation of such
> interest through the procedures used, and the probable value, if any, of additional
> or substitute procedural safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirements would entail.

11  Mathews, 424 U.S. at 334.

12          **a.  Private Interest**

13          It "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v.

14  Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

15  "Freedom from imprisonment—from government custody, detention, or other forms of physical

16  restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S.

17  at 690. See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an

18  individual's private interest in 'freedom from prolonged detention' is 'unquestionably

19  substantial.'" (quoting Singh, 638 F.3d at 1208)). While "it is important not to overstate the

20  strength of [Petitioner]'s showing under the first *Mathews* factor" in light of his previous bond

21  hearing and given Petitioner's "private interests are further diminished by the fact that he is

22  subject to an order of removal from the United States," Petitioner "has a legitimate and

23  reasonably strong private liberty interest under *Mathews*." Rodriguez Diaz, 53 F.4th at 1207,

24  1208. Accordingly, the Court finds the first Mathews factor weighs in favor of Petitioner.

25          **b.  Risk of Erroneous Deprivation**

26          As set forth above, on November 22, 2022, ICE arrested Petitioner and determined that

27  Petitioner should remain in custody, concluding that he posed a risk to public safety based on his

28  criminal history. (ECF No. 18 at 5; ECF No. 18-8.) The United States District Court for the

1    Northern District of California ordered Respondents to provide Petitioner with an individualized

2    bond hearing before an immigration judge at which the government shall bear the burden to

3    prove by clear and convincing evidence that Petitioner's continued detention remains warranted

4    to protect the public or prevent Petitioner from fleeing. (ECF No. 22.) On December 28, 2023, an

5    IJ held a bond hearing and concluded that, while Petitioner does not pose a danger to the

6    community, he poses a flight risk "that no amount of bond conditions" can mitigate, thereby

7    warranting his continued detention. (ECF No. 26-2 at 25.) On January 29, 2024, Petitioner filed a

8    motion for temporary restraining order, arguing that the immigration judge failed to consider

9    alternatives to detention in violation of his constitutional procedural due process rights and

10   requesting the court to require the immigration judge to consider those alternatives at a second

11   bond hearing. (ECF No. 23.) The United States District Court for the Northern District of

12   California denied relief, finding that "the issue of alternatives with respect to which Mr. Cabrera

13   Espinoza seeks an additional hearing was encompassed in this Court's prior order and arguably

14   addressed by the immigration judge, and Mr. Cabrera Espinoza had a full opportunity to argue

15   that issue with the assistance of counsel." (ECF No. 33 at 4.) On April 10, 2024, the BIA

16   dismissed Petitioner's appeal of the IJ's decision denying bond. (ECF No. 36 at 5; ECF No. 37-

17   1.)

18          Like the petitioner in <u>Rodriguez Diaz</u>, the determination to detain Petitioner "was subject

19   to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral

20   decisionmaker. These procedures ensured that the risk of erroneous deprivation would be

21   'relatively small.'" <u>Rodriguez Diaz</u>, 53 F.4th at 1210 (quoting <u>Yagman v. Garcetti</u>, 852 F.3d 859,

22   865 (9th Cir. 2017)).

23          Petitioner argues that the probable value of a second bond hearing is significant. (ECF

24   No. 36 at 15.) Petitioner states that he "now has additional evidence to present—none of which

25   was previously considered by the Immigration Judge," including sworn testimony "detailing his

26   prior compliance with two forms of conditional release in the criminal context—pre-trial release

27   and parole," "promis[ing] to 'not violate the law by absconding from a removal order[,]'" and

28   "detail[ing] the support of his extended family who will help to ensure his compliance with any

21

1    terms and conditions of release on alternatives to detention." (Id. at 16.) Petitioner also "can

2    provide objective evidence as to the efficacy of alternatives to detention" that "reveals that

3    alternatives to detention are highly effective at ensuring noncitizens appear as instructed." (Id.)

4        The United States District Court for the Northern District of California previously denied

5    Petitioner's request for a second bond hearing, finding:

6    > In short, the issue of alternatives with respect to which Mr. Cabrera Espinoza
     > seeks an additional hearing was encompassed in this Court's prior order and
7    > arguably addressed by the immigration judge, and Mr. Cabrera Espinoza had a
     > full opportunity to argue that issue with the assistance of counsel. Under these
8    > circumstances, the probable value of an additional hearing and the risk of
     > erroneous deprivation are minimal.
9

10   (ECF No. 33 at 4.) The Court similarly finds that Petitioner had a full opportunity to argue these

11   issues with the assistance of counsel and the probable value of an additional hearing and the risk

12   of erroneous deprivation are minimal. Accordingly, the second Mathews factor weighs against

13   Petitioner.

14                    **c.  Government's Interest**

15       "[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in

16   the United States in violation of our law'" and "has an obvious interest in 'protecting the public

17   from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S.

18   at 518, 515). "These are interests of the highest order that only increase with the passage of

19   time." Rodriguez Diaz, 53 F.4th at 1208. "The longer detention lasts and the longer the

20   challenges to an IJ's order of removal take, the more resources the government devotes to

21   securing an alien's ultimate removal. The risk of a detainee absconding also inevitably escalates

22   as the time for removal becomes more imminent." Id. "For all these reasons," the Ninth Circuit

23   has held that the government's interests in immigration detention cases "are significant." Id. In

24   accordance with Rodriguez Diaz, the Court finds the third Mathews factor weighs in favor of

25   Respondent.

26                    **d.  Summary**

27       Based on the foregoing, the Court finds that one of the Mathews factors weighs in favor

28   of Petitioner and two weigh against Petitioner. On balance, the Mathews test supports a finding

1    that Petitioner is not entitled to a second bond hearing. Accordingly, Petitioner's second claim

2    for relief is denied.

3        3.  Conclusion

4        In sum, the Court finds that Petitioner's prolonged detention in this case does not exceed

5    the bounds of substantive due process nor does procedural due process compel a second bond

6    hearing at this time. Accordingly, the petition is denied.

7            **Petitioner's Motion for Status Conference**

8        On May 28, 2025, counsel for Petitioner filed a motion requesting a status conference.

9    (ECF No. 74.) The docket text of the motion reflects a hearing date of June 4, 2025, at 12:00

10   p.m. (Id.) As provided by the Local Rules of Practice for the United States District Court,

11   Eastern District of California ("L.R."),

12           Except as otherwise provided in these Rules or as ordered or
             allowed by the Court, all motions shall be noticed on the motion
13           calendar of the assigned Judge or Magistrate Judge.[11] The moving
             party shall file a notice of motion, motion, accompanying briefs,
14           affidavits, if appropriate, and copies of all documentary evidence
             that the moving party intends to submit in support of the motion.
15           The matter shall be set for hearing on the motion calendar of the
             Judge or Magistrate Judge to whom the action has been assigned or
16           before whom the motion is to be heard not less than thirty-five (35)
             days after service and filing of the motion.
17

18   L.R. 230(b).

19       Here, counsel for Petitioner has not complied with the Local Rules and has not moved the

20   Court for a shortened schedule. The Court notes that counsel characterized the motion as

21   "administrative," but such a characterization does not exempt counsel from complying with the

22   Local Rules. The Court appreciates the prolonged nature of Petitioner's detention, but that does

23   not grant counsel leave to ignore the Court's rules and procedures. Counsel is admonished to

24   read the rules and this Court's procedures. Setting a hearing time for a week from filing and

25   especially at 12 pm can only be construed as utterly ignoring this Court's rules and procedures.

26

27   ---

     [11] "Each Judge or Magistrate Judge maintains an individual motion calendar. Information as to the times and dates
28   for each motion calendar may be obtained from the Clerk or the courtroom deputy clerk for the assigned Judge or
     Magistrate Judge." L.R. 230(a).

The Court's law and motion calendar is clearly set forth on the Court's website. In light of the Court's conclusion above, there is no need for a status conference and the request is denied.

### III.

### ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus (ECF No. 1) is DENIED;

2. Petitioner's request for adjudication (ECF No. 70) is TERMINATED;

3. Petitioner's motion for status conference (ECF No. 74) is DENIED; and

4. The Clerk of Court is DIRECTED to CLOSE the case.

IT IS SO ORDERED.

Dated:  __May 30, 2025__

STANLEY A. BOONE
United States Magistrate Judge